## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| JONATHAN DAMRON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil Action No. 5:21-00085** |
| | ) | |
| MAJOR DJ, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss (Document No. 31), filed on April 12, 2021. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 33.) On April 28, 2021, Plaintiff filed a Response in Opposition to Defendants' Motion. (Document No. 34.) Defendants filed their Reply on May 5, 2021. (Document No. 35.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted in part and denied in part.

### PROCEDURAL BACKGROUND

On February 12, 2021, Plaintiff, acting *pro se,*[1] filed his Motion to Proceed Without Prepayment of Fees and Amended Complaint claiming entitlement to relief pursuant to Title 42 U.S.C. § 1983. (Document Nos. 4 and 5.) On February 24, 2021, Plaintiff filed his Second

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Amended Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983. (Document No. 7.) In his Second Amended Complaint, Plaintiff names the following as Defendants: (1) Major D.J.; (2) Cpt. Burton; (3) Sgt. Lester; (4) Sgt. Cox; (5) Corp. Clear; (6) Corp. Walls; (7) Corp. Cox; (8) Corp. Tony; (9) Corp. Haynes; (10) Corp. Sampson; (11) Corp. Coulture; (12) Corp. Grant; (13) Corp. Wimmer; (14) Corp. Powers; (15) Corp. Pack; (16) Corp. Mitchum; (17) Corp. Booth; (18) Corp. Sturgil; (19) Officer Maxwell; and (20) Counselor Martin. (Id.) Plaintiff alleges that the above Defendants have violated his Eighth Amendment rights by subjecting him to unconstitutional conditions of confinement. (Id., pp. 4 – 5.) Specifically, Plaintiff states as follows:

> These are all "day shift" and "night shift" employees at SRJ. They have denied me a shower, phone call, toilet paper, hygiene, access to grievance procedures, and access to outside the cell since December 13, 2020. Night shift officers denied me "emergency assistance" due to being locked in a cell in a pod with 28 other inmates outside walking around (never locked down). These individuals sprayed feces and urine under our door on us. Then [the inmates] tried to gain access by way of a shank (knife). There is 24-hour video system to confirm anything I say in this 1983 form. I have asked repeatedly to speak to a ranking officer, I was taken to medical and spoke to Major D.J. [but] he stated "I'm not working here, I can't do anything." A week later, I spoke to Capt. Burton and explained the 2 page letter I sent by Officer Padea and he stated "What the hell is wrong with you, and that he hated this 'gang shit.'" That was it. I've asked repeatedly to be placed in administrative segregation and keep getting denied.

(Id.) Plaintiff requests injunctive and monetary relief. (Id., pp. 5 – 6.)

By Order entered on March 18, 2021, the undersigned granted Plaintiff's Motion to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 9.) On April 12, 2021, Defendants filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 31 and 32.) Defendants argue that Plaintiff's claims should be dismissed based on the following: (1) "The Eleventh Amendment to the United States Constitution as well as the *Will* Doctrine bars Plaintiff's claims against the Defendants" (Document No. 32, p. 3.); (2) "All

Defendants are entitled to qualified immunity" (Id., pp. 3 – 4.); (3) "Plaintiff's Complaint does not meet the pleading standard of Rule 8 of the Federal Rules of Civil Procedure as delineated in *Twombly* and *Iqbal* and fails to assert any factual content that would result in a reasonable inference that Defendants are liable for the alleged misconduct" (Id., pp. 4 – 5.); and (4) Plaintiff failed to exhaust his administrative remedies (Id., pp. 5 – 6.). As an Exhibit, Defendants attach a copy of Plaintiff's Second Amended Complaint as filed on February 24, 2021. (Id., pp. 6 – 14.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 13, 2021, advising him of the right to file a response to the Defendants' Motion to Dismiss. (Document No. 33.) On April 28, 2021, Plaintiff filed his Responses in Opposition. (Document No. 34.) On May 5, 2021, Defendants filed their Reply. (Document No. 35.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements

3

of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658,

4

685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

### A.    <u>Claims Against Defendants in their Official Capacities</u>:

In their Motion to Dismiss, Defendants argue Plaintiff's claims against them are barred by the Eleventh Amendment of the United States Constitution and the "*Will* Doctrine." (Document No. 32, p. 3.) Defendants argue that "[a] reading of the Plaintiff's Complaint reveals that the Plaintiff is suing the Defendants in their official capacities." (<u>Id.</u>) Defendants contend that they are "agents of the State instrumentality through their employment with the West Virginia Regional Jail and Correctional Facility Authority" and "all of the actions alleged in the Complaint were rendered in furtherance of the Defendants' official duties as state officials." (<u>Id.</u>) Thus, Defendants conclude Plaintiff's claims are barred. (<u>Id.</u>)

In Response, Plaintiff notes that the named Defendants are the day shift and night shift officers that subjected him to cruel and unusual conditions of confinement from December 10, 2020, until February 22, 2021. (Document No. 34.) Plaintiff, however, does not address whether he is asserting his claims against Defendants in their official or individual capacities, or both. (<u>Id.</u>)

Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[2] <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects

---

[2] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also Fauconier v. Clarke, 966 F.3d 265, 279-80 (4th Cir. 2020)(an individual that is employed by an arm of the State and is sued in his or her official capacity is immune from suit under the Eleventh Amendment); Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will, supra, 491 U.S. at 71, 109 S.Ct. at 2312. In Will, however, the Supreme Court held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." Id.; also see Frew v. Hawkins, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004)("the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law").

A person acting under color of state law can be sued in either his or her official or personal capacity for violating a prisoner's constitutional rights. Thus, a prison official may be sued in his or her personal capacity for the official's own acts or omissions occurring under color of state law. If the prison official is sued in his or her personal capacity, the prison official may be liable for money damages. If the prison official, however, is sued in his or her official capacity, the prison official may *not* be sued for money damages because the official is entitled to sovereign immunity.

In <u>Hafer</u>, the Court explained that the real party in interest in an official capacity claim is the governmental entity and the target of the claim is the entity's policy or custom. <u>Hafer v. Melo</u>, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." <u>Id.</u> To the extent Plaintiff seeks monetary damages from the Defendants in their official capacity, the undersigned finds that Plaintiff's claims are barred by the Eleventh Amendment and should be dismissed. <u>See</u> <u>Adams v. Ferguson</u>, 884 F.3d 219 (4th Cir. 2018)("[T]he Eleventh Amendment does not bar an award of damages against an official in his personal capacity that can be executed only against the official's personal assets.") Liberally construing Plaintiff's Second Amended Complaint, however, the undersigned finds that Plaintiff's allegations appear to be against the Defendants in the personal capacity for actions taken under color of state law. Specifically, Plaintiff alleges that Defendants subjected him to inhumane conditions of confinement by placing him in an overcrowded cell and denying him hygiene supplies and showers. Plaintiff does not appear to target the prison's policies or customs, but complains of allegedly improper conduct by the individual Defendants. Thus, the undersigned finds that the foregoing claims are asserted against Defendants in their personal capacities. To the extent Plaintiff has asserted official capacity claims against Defendants seeking monetary relief, the undersigned respectfully recommends that the District Court dismiss Plaintiff's claims.

   **B.**    **<u>Failure to state a cognizable claim</u>:**

In their Motion, Defendants argue that "Plaintiff's Complaint does not allege any specific acts or facts regarding each Defendant's connection to the alleged injuries done to the Plaintiff, and fails to adequately state a claim upon which can be granted under the standards of Rule 8 of the Federal Rule of Civil Procedure as delineated in *Iqbal* and *Twombly*." (Document No. 32, pp.

4 – 5.) Defendants argue that Plaintiff fails to provide "any factual content in his Complaint against the Defendants individually" and "simply and summarily states that most of the alleged wrongs are a result of the conduct of 'day shift' and 'night shift' employees." (Id., p. 4.) Defendants claim that "[t]his amounts to little more than 'labels and conclusions' which are insufficient to plead a cause of action." (Id.) Defendants argue "[t]here is no specific mention of facts that in any way show how each of these Defendants, could plausibly be liable in this matter." (Id., p. 5.) Thus, Defendants conclude that Plaintiff's Complaint should be dismissed. (Id.)

In Response, Plaintiff contends that he has set forth adequate facts to state a claim against Defendants. (Document No. 34.) Plaintiff further contends that he can provide additional facts to support his claim. (Id.) Specifically, Plaintiff appears to allege that above Defendants worked either day shift or night shift at the Southern Regional Jail and Correctional Facility. (Id.) Plaintiff claims that for several weeks all Defendants denied his daily requests for a shower, toilet paper, toothpaste, a toothbrush, phone calls, and medical care. (Id.) Plaintiff contends that he was held in an overcrowded cell for 24 hours a day for approximately one week. (Id.) Plaintiff alleges that around mid-night on December 22, 2020, unknown inmates approached his cell and sprayed him with "feces and urine." (Id.) Plaintiff alleges that even though he pressed the emergency call button reporting the incident to the Defendants on duty, no action was taken to stop the misconduct. (Id.) Plaintiff alleges that he was sprayed with human waste until approximately 3:00 a.m. on December 23, 2020. (Id.) Plaintiff further contends that although Defendants were aware he was sprayed with human waste, Plaintiff was not allowed to shower until December 27, 2020, at 8:00 p.m. (Id.) Thus, Plaintiff argues that Defendant's Motion should be denied. (Id.)

In Reply, Defendants continue to argue that Plaintiff's Complaint does not meet the pleading standard of Rule 8 of the Federal Rules of Civil Procedure. (Document No. 35, pp. 2 –

3.) Defendant contends that "Plaintiff has failed to put forth any facts indicating how each individual Defendant violated his constitutional rights." (Id.) To the extent Plaintiff asserts claims against John Doe or Jane Doe defendants, Defendants argue that such is in "contravention of the pleading standards." (Id.)

When a *pro se* Complaint can be remedied by an amendment, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton, 504 U.S. at 34, 112 S.Ct. at 1728; also see Goode, 807 F.3d at 619. The undersigned finds that viewing Plaintiff's Second Amended Complaint liberally, and considering the additional facts contained in his Response, Plaintiff has made ample allegations of unconstitutional conduct. Despite Defendants' argument to the contrary, Plaintiff has alleged adequate factual content to allow the court to draw the reasonable inference that the Defendants are liable for subjecting Plaintiff to unconstitutional conditions of confinement in violation of the Eighth Amendment.

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v.

Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting

10

from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); Helling v. McKinney, 509 U.S. 33 – 34, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)("[A] condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979; Brown v. N.C. Dept. of Corr., 612 F.3d 720, 723 (4th Cir. 2010(quoting Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002))("[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so"). Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

Plaintiff alleges that between December 10, 2020 and February 22, 2021, Plaintiff was locked in his cell 24 hours a day, seven days a week. Plaintiff contends that from December 10,

2020, until December 27, 2020, Defendants denied his continuous and repeated requests for toilet papers, toothpaste, a toothbrush, showers, phone calls, and administrative remedy forms. Plaintiff further explains that on or about December 20, 2020, a third inmate was placed in the "2-man cell." Plaintiff contends that on the following night, a fourth inmate was placed in the "2-man cell." Plaintiff alleges that four inmates remained in the "2-man cell" until December 25, 2020, when one of the inmates was removed from his cell. Plaintiff states that three inmates remained in the "2-man cell" until sometime in January, when another of the inmates was removed from his cell. Next, Plaintiff alleges that around mid-night on December 22, 2020, other inmates within the pod approached his cell and sprayed Plaintiff and the other inmates in the cell with feces and urine. Plaintiff contends that he pressed the emergency call button notifying the Defendants on duty of the incident, but they failed to take action to stop the misconduct. Plaintiff states that he and the other inmates within his cell were sprayed with human waste until approximately 3:00 a.m. on December 23, 2020. Finally, Plaintiff states that even though Defendants were aware he was sprayed with human waste, Plaintiff was not allowed to shower until December 27, 2020, at 8:00 p.m. (Id.) Thus, Plaintiff contends that the conditions of his confinement constituted cruel and unusual punishment.

As stated above, prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish, 573 F.2d at 125. "Depriving inmates the opportunity to shower and exercise can violate the Eighth Amendment's protection against cruel and unusual punishment. Rivera v. Mathena, 795 Fed.Appx. 169, 172 (4th Cir. 2019)(citing Mitchell v. Rice, 954 F.2d 187, 193 (4th Cir. 1992) and Hite v. Leeke, 564 F.2d 670, 672 (4th Cir. 1977)). In Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in

12

combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." Furthermore, "a prisoner's exposure to human waste may give rise to an Eighth Amendment violation. Williams v. Collier, 357 Fed.Appx. 532, 535 (4th Cir. 2009)(citing DeSpain v. Uphoff, 264 F.3d 965, 974-75 (10th Cir. 2001)); but see Salmons v. Western Regional Jail, 2019 WL 5616916, * 6 (S.D.W.Va. Oct. 30, 2019)(J. Chambers)("[T]he mere smell or presence of human waste is not sufficiently serious to constitute a violation of the Eighth Amendment.). Exposure to human waste evokes both health and standards of dignity concerns embodied in the Eighth Amendment. McCord v. Maggio, 927 F.2d 844, 848 (5th Cir. 1991). Court have repeatedly held that leaving a prisoner in a cell containing human waste is sufficiently dangerous to an inmate's health and safety as to satisfy the objective prong. Williams v. Griffin, 952 F.2d. 820, 825 (4th Cir. 1991)(holding that overcrowded cells with sewage and urine, as well as insects and vermin, support an Eighth Amendment claim); also see Walker v. Schult, 717 F.3d 119, 126-27 (2nd Cir. 2013)(holding that unsanitary cell conditions, including human waste on the floor, can constitute cruel and unusual punishment); Taylor v. Larson, 505 Fed.Appx. 475, 477 (6th Cir. 2012)(remanding the case to the district court for consideration of Plaintiff's claim that his confinement for three days in a cell covered with feces violated the Eighth Amendment); Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004)(affirming a finding that filthy living conditions including fecal matter and urine in cells constituted an Eighth Amendment violation); McBride v. Deer, 240 F.3d 1287, 1291-92 (10th Cir. 2001)(finding that three days in a feces-covered cell is a sufficient basis to state an Eighth Amendment claim); Howard v. Adkinson, 887 F.2d 134, 137 (8th Cir. 1989)(plaintiff's placement in a cell covered with filth and human waste in combination with

denial of remedial measures or proper cleaning supplies resulted in an Eighth Amendment violation). When determining whether exposure to human waste is cruel and unusual, such depends on both the duration and the severity of the exposure. See Willey v. Kirkpatrick, 801 F.3d 51, 68 (2nd Cir. 2015). In Willey, the Second Circuit set forth two examples:

> An exposure to human waste that lasts merely ten minutes, but that exposure takes the form of working in a well while facing "a shower of human excrement without protective clothing and equipment," a jury may find an Eighth Amendment violation. See Fruit v. Norris, 905 F.2d 1147, 1151 (8th Cir. 1990). . . . Likewise, a less severe exposure may be constitutionally permissible if rectified in short order but may become cruel and unusual with the prolonged passage of time. See McCord, 927 F.2d at 846-47(holding that occasional sewage backup onto cell floor on which inmate slept over two-year period, among other conditions, violated the Eighth Amendment).

Id.; also see Hutto v. Finney, 437 U.S. 678, 686, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)(finding that confinement in a "filthy, overcrowded cell and a diet of [1,000 calories per day] might be tolerable for a few days and intolerably cruel for weeks or months); Williams v. O'Brien, 2014 WL 2864897, * 10 – 11 (N.D.W.Va. June 24, 2014)(an inmate's placement in a cell without running water, no sink, no toilet, half a mattress, being provided a bag for his bathroom needs, and no one removing the used bag for two days failed to state an Eighth Amendment claim where the inmate's exposure to such conditions was limited to two and a half days and inmate failed to allege "any harm more serious than temporary discomfort"). In Shakka v. Smith, the Fourth Circuit determined plaintiff failed to establish an Eighth Amendment violation where Plaintiff was denied a shower for three days after human waste was thrown onto plaintiff and his surroundings. Shakka v. Smith, 71 F.3d 162, 167-68 (4th Cir. 1995). The Fourth Circuit determined that although the plaintiff may have preferred a shower, the Court could not determine that the plaintiff was "deprived of the minimal civilized measures of human necessities in such a palpable way that injury should be inferred" where the plaintiff was undisputedly provided with water and cleaning

14

materials. Id. at 168. Liberally construing Plaintiff's Second Amended Complaint, and considering the additional factual allegations included in Plaintiff's Response, the undersigned concludes that Plaintiff has alleged a facially plausible claim under the Eighth Amendment. The undersigned respectfully recommending that Defendants' Motion be denied to the extent Defendants allege that Plaintiff fails to allege a plausible claim. The undersigned further recommends that Plaintiff be allowed to amend his Complaint to include the additional allegations contained in his Response.

C.    **Qualified Immunity**:

In their Motion, Defendants further argue that Plaintiff's claims should be dismissed because Defendants are entitled to qualified immunity. (Document No. 32, pp. 3 – 4.) In support, Defendants claim that "Plaintiff has failed to make any allegation that a particular action of the Defendants violated a right, privilege, or immunity secured to the Plaintiff." (Id., p. 4.) Therefore, Defendants conclude that Plaintiff claims against them in their individual capacities should be dismissed. (Id.) In Response, Plaintiff contends that he has stated a claim against Defendants for the violation of his constitutional rights. (Document No. 34.) In Reply, Defendants continue to argue that Plaintiff fails to indicate how any of the individual Defendants violated his constitutional rights. (Document No. 35, pp. 3 – 4.) Therefore, Defendants argue they are entitled to qualified immunity. (Id.)

Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their

15

"conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In determining the validity of a qualified immunity defense, the Court should be guided by a two-prong test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cooper v. Sheehan, 735 F.3d 153, 158 *4th Cir. 2013)(internal quotation marks and citations omitted).

As explained above, the undersigned finds that Plaintiff has alleged a plausible claim that the conditions of his confinement resulted in a violation of his Eighth Amendment rights. The undersigned further finds that the Eighth Amendment right to be free from cruel and unusual punishment was clearly established at the time of the allegation violation. In 1993, the United States Supreme Court held that a "condition of confinement that is sure or very likely to cause serious illness" can violate the Eighth Amendment. Helling, 509 U.S. at 33, 113 S.Ct. at 2480-81. In Hite, the Fourth Circuit made clear that the long-term deprivation of the basic elements of hygiene violates the Eighth Amendment. Hite, 564 F.2d at 672. In Williams, the Fourth Circuit made clear that unsanitary cell conditions, in part based on the presence of human waste, can form the basis of an Eighth Amendment claim. Williams, 952 F.2d at 825. Based on these decisions, reasonable correctional officers could have believed that subjecting Plaintiff to above alleged

16

conditions was unlawful. Defendants, therefore, are not entitled to qualified immunity.

D.    **Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

Similar to the PLRA, the West Virginia Prisoner Litigation Reform Act ("WVPLRA") requires an inmate to exhaust the agency's procedures before filing a civil action regarding an ordinary administrative remedy. W.Va. Code § 25-1A-2(c). An "ordinary administrative remedy" is defined as "a formal administrative process by which an inmate submits a grievance seeking redress and presenting concerns regarding any general or particular aspect of prison life which does not involve violence . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." W. Va. Code § 25-1A-2(a). Exhaustion of an ordinary administrative remedy is satisfied upon a showing of the following:

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate

grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director the Regional Jail Authority, or the Director's designee.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983 or <u>Bivens</u> action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>;

19

Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies). Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing

Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

West Virginia Division of Corrections Policy Directive 335.00 (codified in the W. Va. Code of State Rules), which was in effect at the time of the incidents described in Plaintiff's Complaint, sets forth the administrative remedy process. An inmate initiates the administrative process by filing a grievance.[4] Specifically, an inmate must first file a grievance utilizing a grievance form "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." W. Va. Code R. § 90-9-4.1. Only one issue or complaint may be grieved per form, and the inmate must submit it to his/her Unit Manager. Id. § 90-9-4.2 – 4.3. The Unit Manager is required to ensure that an answer to the grievance is provided to the inmate within five days. Id. § 90-9-4.5. Next, the inmate may appeal the Unit Manager's response "to the Warden/Administrator within five (5) days from delivery of the response to his/her grievance" using the same form submitted to the Unit Manager. Id. § 90-9-5.1. "The Warden/Administrator shall respond to the appeal . . . within five (5) days." Id. § 90-9-5.4. Finally, the inmate may appeal the Warden's response "to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response . . . using the same form . . ." Id. § 90-9-6.1. "*Only*

---

[4] A "grievance" is defined to "mean the formal process by which an inmate seeks redress over any matter concerning prison life, whether it involves general circumstances or particular episodes." W. Va. Code St. R. § 90-9-4.1.

21

*one grievance per envelope shall be permitted*" and "submission of multiple grievance . . . shall be grounds for rejection for the entire mailing . . .." Id.(emphasis in original). "If a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process." Id. § 90-9-6.4.

In their Motion to Dismiss, Defendants argue that Plaintiff's claims should be dismissed because Plaintiff failed to fully exhaust his administrative remedies. (Document No. 32, pp. 5 – 6.) In support, Defendants argue that Plaintiff "failed to plead any facts indicating that he completed the grievance process." (Id., p. 6.) Defendants state that "Plaintiff only pled that he was denied access to the grievance procedure." (Id.) Defendants, however, complain that "Plaintiff failed to articulate any facts indicating how he was denied access to the grievance process." (Id.) In Response, Plaintiff continues to argue that he was denied forms to start the grievance process. (Document No. 8.) Plaintiff explains that he made requests for administrative forms on December 14, 2020, December 15, 2020, and December 23, 2020. (Id., pp. 8 – 9.) In Reply, Defendants continue to argue that Plaintiff "still did not put forth any facts indicating how he could not have exhausted his administrative remedies." (Document No. 35, p. 3.) Defendants explain that Plaintiff failed to properly plead how he was denied access to the grievance process because Plaintiff failed to name which specific officers denied him access to the grievance process. (Id.) Therefore, Defendants argue that Plaintiff's claims should be dismissed. (Id.)

Based upon a review of the record, the undersigned finds that Defendants have not met their burden proving that Plaintiff failed to exhaust his available administrative remedies. Viewing the evidence in a light most favorable to Plaintiff, the undersigned cannot find that Plaintiff failed to exhaust all available administrative remedies. In Plaintiff's verified Second Amended Complaint, Plaintiff declares that the administrative remedy process was unavailable. (Document

No. 7.) Plaintiff explains that he was locked in his cell 24 hours a day, seven days a week, and officers refused to provide him with administrative remedy forms. (Id.) In his Response, Plaintiff provides specific dates on which he alleges he was denied administrative remedy forms. (Document No. 34, pp. 8 - 9.) In their Motion, Defendants contend that "Plaintiff has failed to establish that he has fully exhausted the administrative grievance process." (Document No. 32.) As explained above, failure to exhaust administrative remedies is an affirmative defense. Therefore, Defendants have the burden of proving that Plaintiff had available remedies which he did not exhaust. In the instant case, Defendants have not provided any evidence indicating that Plaintiff had available remedies which he did not exhaust. See Ferguson v. Clarke, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed); McMillian v. N.C. Central Prison, 2013 WL 1146670, * 5 (E.D.N.C. March 19, 2013)(An inmate's allegations that grievances were not accepted by staff, "without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, are insufficient to refute defendants' arguments in support of their exhaustion defense."), aff'd, 534 Fed.Appx. 221 (4th Cir. 2013). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss be denied based upon Plaintiff's failure to exhaust.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court

23

confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion to Dismiss (Document No. 31) to the extent Defendants' request the dismissal of Plaintiff's claim for monetary damages against Defendants in their official capacities; **DENY** Defendants' Motion to Dismiss (Document No. 31) to the extent Defendants request the dismissal of Plaintiff's claim of injunctive relief against Defendants in their official capacities; **DENY** Defendants' Motion to Dismiss (Document No. 31) to the extent Defendants request the dismissal of Plaintiff's claims against Defendants in their individual capacities; **GRANT** Plaintiff permission to amend his Second Amended Complaint to include the additional facts contained in his Response; and **REFER** the matter back to the undersigned for further proceedings.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Volk

and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, Attorney Ward Morgan,[5] and transmit a copy to counsel of record.

Date: November 8, 2021.

Omar J. Aboulhosn
United States Magistrate Judge

---

[5] Plaintiff indicates that Attorney Ward Morgan said he would represent Plaintiff's in the above action. (Document No. 34, p. 1.) The undersigned, however, notes that Attorney Morgan has not filed a Notice of Appearance on behalf of Plaintiff.